Randall T. Garteiser (CBN 231821)
rgarteiser@ghiplaw.com
Christopher A. Honea (CBN 232473)
chonea@ghiplaw.com
GARTEISER HONEA PLLC
119 W. Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

Attorneys for Plaintiff
BLUE SPIKE LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE SPIKE LLC, | Civil Case No.: 2:18-cv-05391 |
| Plaintiff, | **ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| SOUNDCLOUD LIMITED, | **JURY TRIAL DEMANDED** |
| Defendant. | |

GARTEISER HONEA – TRIAL ATTORNEYS

1

Plaintiff Blue Spike LLC ("Blue Spike" or "Plaintiff") files this complaint against the above-named Defendant ("SoundCloud"), alleging 3 counts of infringement of the following 3 Patents-in-Suit:

1.    U.S. Patent 7,159,116 B2, titled "Systems, methods and devices for trusted transactions" (the '116 Patent).

2.    U.S. Patent 8,538,011 B2, titled "Systems, methods and devices for trusted transactions" (the '011 Patent).

3.    U.S. Patent 7,813,506 B2, titled "System and methods for permitting open access to data objects and for securing data within the data objects" (the '506 Patent).

*See* Exhibits 2–4.

## NATURE OF THE SUIT

1.    This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.    Plaintiff Blue Spike LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike LLC is the assignee of the exclusive license of the Patents-in-Suit, and has ownership of all substantial rights in the Patents-in-Suit, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

GARTEISER HONEA – TRIAL ATTORNEYS

2

3.   On information and belief, Defendant SoundCloud Limited is a company organized under the laws of Germany, with its principal place of business at Rheinsberger Str. 76/77, 10115 Berlin, Germany. Defendant can be served through its general manager and wholly-owned subsidiary, SoundCloud Inc. *See* California Code of Civil Procedure Section 416.10(b); *Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071, 1075–76 (C.D. Cal. 2013). On information and belief, SoundCloud Inc. is a corporation established under the laws of the State of Delaware, with its place of business at 510 Treat Avenue, San Francisco, California 94110. SoundCloud Inc. and SoundCloud Limited can be served through its registered agent, The Corporation Trust Company, located at National Registered Agents, Inc., 818 West Seventh Street, Suite 930, Los Angeles, California 90017.

## JURISDICTION AND VENUE

4.   This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq*. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

5.   Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendant has a regular and established place of business in this District. *See*, 28 U.S.C § 1400(b); *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017); *In re Cray Inc.*, 871 F.3d 1355, 1360–4 (Fed. Cir. 2017). Foreign corporations that do not reside in the United States are subject to suit under 28 U.S.C § 1391(c)(3) in any judicial district.

3

GARTEISER HONEA – TRIAL ATTORNEYS

6.    The Court has personal jurisdiction over Defendant for the following: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District; (2) Defendant regularly does business or solicits business in this District; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue by its offering of infringing products and services and providing infringing products and services in this District; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with this District and should reasonably expect to be haled into court here by its offering of infringing products and services and providing infringing products and services in this District.

## FACTUAL BACKGROUND

7.    Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

8.    Blue Spike is a company focused on innovation with research and development. Blue Spike does not make a service that competes directly with Defendant, but Blue Spike has licensed its pioneering patents to competitors of Defendant.

9.    Blue Spike is a practicing entity, just not in the same field as Defendant. For instance, Blue Spike provides pre-release tracking technology for audio, like new

4

music artists' singles, that may be sent to various radio stations for promotional purposes. This type of tracking helps an artist know whether a radio station improperly posts the song for sale rather than simply playing it as a "demo only." Blue Spike also has other service offerings at bluesspike.com.

10.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

11.     Moskowitz is an inventor on more than 110 patents, including forensic watermarking, signal abstracts, data security, software watermarks, service license keys, deep packet inspection, license code for authorized software and bandwidth securitization.

12.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA marked the application "classified" under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

13.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to

GARTEISER HONEA – TRIAL ATTORNEYS

GARTEISER HONEA – TRIAL ATTORNEYS

electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

14.    Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

15.    Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

## THE ACCUSED PRODUCTS AND SERVICES

16.    Defendant makes, uses, offers for sale and sells in the U.S. products, systems, and/or services that infringe the Patents-in-Suit, including, but not limited to, SoundCloud Music Services ("Accused Products and Services").



**Figure 1** – Screen shot of Defendant offering of Accused Products and Services on SoundCloud webpage, as viewed at https://www.soundcloud.com, *see* Exhibit 1.

GARTEISER HONEA – TRIAL ATTORNEYS

**Figure 2** – Screen shot of Defendant offering of Accused Products and Services on Defendant webpage, as viewed at https://soundcloud.com/pages/contact, *see* Exhibit A.

17.    Defendant has not sought or obtained a license for any of Blue Spike's patented technologies. This creates a competitive disadvantage to other Companies, like Apple, Acer, Dell, IBM, Samsung, and Sony to name some large companies, who recognized the value and novelty Blue Spike's patents provide to society.

18.    Each count of patent infringement contained herein is accompanied by a representative claim. *See*, *Atlas IP LLC v. P. Gas and Electric Co.*, 15-CV-05469-EDL, 2016 WL 1719545, at \*5 (N.D. Cal. Mar. 9, 2016) ("*Iqbal* and *Twombly* only require Plaintiff to state a plausible claim for relief, which can be satisfied by adequately pleading infringement of one claim.").

**COUNT 1:**

**INFRINGEMENT OF U.S. PATENT U.S. Patent 7,159,116 B2**

19.    Blue Spike incorporates by reference the paragraphs above and below.

20.    The '116 Patent is presumed valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

GARTEISER HONEA – TRIAL ATTORNEYS

21.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

22.    The specification of the '116 Patent explains both the problem in the prior art and the benefit of the computer-implemented invention.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

23.    Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '116 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

24.   Defendant makes, uses, offers for sale and sells in the U.S. the Accused Products and Services which practice all the elements of the '116 Patent. For instance, the Accused Products and Services infringe claim 14 of the '116 Patent which recites:

> A device for conducting a trusted transaction between at least two parties who have agreed to transact, comprising:
> means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties, a unique identification of the transaction, a unique identification of value added information to be transacted, a unique identification of a value adding component;

> a steganographic cipher for generating said unique identification information, wherein the steganographic cipher is governed by at least the following elements: a predetermined key, a predetermined message, and a predetermined carrier signal; and
> a means for verifying an agreement to transact between the parties.

25.  Defendant makes, uses, offers for sale and sells in the U.S. the Accused Products and Services which institute trusted transactions between at least two parties who have agreed to transact.

**Indirect Infringement.**

26.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '116 Patent in this State, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of one or more claims of the '116 Patent. Such products include, without limitation, one or more of the Accused Products and Services. By making, using, importing offering for sale, and/or selling such, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '116 Patent under 35 U.S.C. § 271.

27.  Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v.*

GARTEISER HONEA – TRIAL ATTORNEYS

*JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh*, 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

28.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

29.   Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

30.   It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's products and services. *See In re*

GARTEISER HONEA – TRIAL ATTORNEYS

11

GARTEISER HONEA – TRIAL ATTORNEYS

*Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012).

**Induced Infringement.**

31.  Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products and Services.

32.  Defendant induces end users of the Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access the Internet via its router system.

33.  Defendant also provides customers other incentives to use the infringing services, such as advertising. *See* Exhibit B; *see Power Integrations v. Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

34.  Defendant had knowledge of the '116 Patent at least as early as the service of this complaint, and has known since then that the Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the Accused Products and Services, its technical support, demonstrations and

12

tutorials. Thus, Defendant is liable for infringement of one or more claims of the '116 Patent by actively inducing infringement.

35.   The Ninth Circuit has rejected the notion that a plaintiff must allege the facts from which knowledge is to be inferred. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545–47 (9th Cir. 1994), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Rather, it is sufficient to allege knowledge or intent "generally, just as the rule states—that is, simply by saying that [it] existed." *Id.* at 1547.

**Contributory Infringement.**

36.   Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

37.   The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

38.   Defendant contributed to the infringement by providing the Accused Products and Services to its customers, partners and resellers.

39.   The accused functionality in the Accused Products and Services has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F. 3d

GARTEISER HONEA – TRIAL ATTORNEYS

1301 (Fed. Cir. 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321.

**Plaintiff Suffered Damages.**

40.   Defendant's acts of infringement of the '116 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount described in the prayer below. Defendant's infringement of Blue Spike's exclusive rights under the '116 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

41.   On information and belief, the infringement of the '116 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '116 Patent, including but not limited to at least one or more of the following events:

a.      The filing of Blue Spike's complaint against Defendant.

b.      In the course of its due diligence and freedom to operate analyses.

c.      News coverage of Blue Spike's enforcement of this patent against other infringers.

42.   On information and belief, Defendant has had at least had constructive notice of the '116 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to

prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

43.   A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

44.   The Ninth Circuit has rejected the notion that a plaintiff must allege the facts from which knowledge is to be inferred. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545–47 (9th Cir. 1994), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Rather, it is sufficient to allege knowledge or intent "generally, just as the rule states—that is, simply by saying that [it] existed." *Id.* at 1547.

GARTEISER HONEA – TRIAL ATTORNEYS

## COUNT 2:

## INFRINGEMENT OF U.S. PATENT US Patent 8,538,011 B2

45. Blue Spike incorporates by reference the paragraphs above and below.

46. The '011 Patent is presumed valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

47. These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

48. The specification of the '011 Patent explains both the problem in the prior art and the benefit of the computer-implemented invention. This difference is not "well known" or "conventional." A human cannot perform these tasks.

49. Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '011 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

50. Defendant makes, uses, offers for sale and sells in the U.S. the Accused Products and Services which practice all the elements of the '011 Patent. For instance, the Accused Products and Services infringe claim 35 of the '011 Patent which recites:

GARTEISER HONEA – TRIAL ATTORNEYS

GARTEISER HONEA – TRIAL ATTORNEYS

> A device for conducting trusted transactions between at least two parties, comprising:
> a steganographic cipher;
> a controller for receiving input data or outputting output data; and
> at least one input/output connection,
> wherein the device has a device identification code stored in the device;
> an analog to digital converter; and
> a steganographically ciphered software application;
> wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization;
> wherein said steganographic cipher receives said output data, steganographically ciphering said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection;
> wherein the device is configured to steganographically cipher both value-added information and at least one value-added component associated with the value-added information.

51.  Defendant makes, uses, offers for sale and sells in the U.S. the Accused Products and Services which institute trusted transactions between at least two parties who have agreed to transact.

**Indirect Infringement.**

52.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '011 Patent in this State, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of one or more claims of the '011 Patent. Such products include, without

limitation, one or more of the Accused Products and Services. By making, using, importing offering for sale, and/or selling such, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '011 Patent under 35 U.S.C. § 271.

53.  Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh*, 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

54.  Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

55.  Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,

545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

56.   It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's products and services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012).

**Induced Infringement.**

57.   Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products and Services.

58.   Defendant induces end users of the Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access the Internet via its router system.

59.   Defendant also provides customers other incentives to use the infringing services, such as advertising. *See* Exhibit A; *see Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring

GARTEISER HONEA – TRIAL ATTORNEYS

hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

60.   Defendant had knowledge of the '011 Patent at least as early as the service of this complaint, and has known since then that the Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the Accused Products and Services, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '011 Patent by actively inducing infringement.

61.   The Ninth Circuit has rejected the notion that a plaintiff must allege the facts from which knowledge is to be inferred. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545–47 (9th Cir. 1994), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Rather, it is sufficient to allege knowledge or intent "generally, just as the rule states—that is, simply by saying that [it] existed." *Id.* at 1547.

**Contributory Infringement.**

62.   Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

63.   The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the

20

distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

64.   Defendant contributed to the infringement by providing the Accused Products and Services to its customers, partners and resellers.

65.   The accused functionality in the Accused Products and Services has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F. 3d 1301 (Fed. Cir. 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321.

**Plaintiff Suffered Damages.**

66.   Defendant's acts of infringement of the '011 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount described in the prayer below. Defendant's infringement of Blue Spike's exclusive rights under the '011 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

67.   On information and belief, the infringement of the '011 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '011 Patent, including but not limited to at least one or more of the following events:

GARTEISER HONEA – TRIAL ATTORNEYS

a.      The filing of Blue Spike's complaint against Defendant.

b.      In the course of its due diligence and freedom to operate analyses.

c.      News coverage of Blue Spike's enforcement of this patent against other infringers.

68.   On information and belief, Defendant has had at least had constructive notice of the '011 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

69.   A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant

once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

70.   The Ninth Circuit has rejected the notion that a plaintiff must allege the facts from which knowledge is to be inferred. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545–47 (9th Cir. 1994), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Rather, it is sufficient to allege knowledge or intent "generally, just as the rule states—that is, simply by saying that [it] existed." *Id.* at 1547.

## COUNT 3:
## INFRINGEMENT OF U.S. PATENT NO. 7,813,506 B2

71.   Blue Spike incorporates by reference the paragraphs above and below.

72.   The '506 Patent is presumed valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

73.   These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

74.   The specification of the '506 Patent explains both the problem in the prior art and the benefit of the computer-implemented invention.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

75.   Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '506 Patent—directly,

GARTEISER HONEA – TRIAL ATTORNEYS

contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

76.   Defendant makes, uses, offers for sale and sells in the U.S. the Accused Products and Services which practice all the elements of the '506 Patent. For instance, the Accused Products and Services infringe claim 6 of the '506 Patent which recites:

> A method for distributing accessible digital content, comprising:
> providing a digital content comprising digital data and file format information;
> selecting a scrambling technique to apply to the digital content;
> scrambling the digital content using a predetermined key resulting in perceptibly degraded digital content wherein the scrambling technique is based on a plurality of predetermined criteria including at least the criteria of reaching a desired signal quality level for the digital content; and
> distributing the scrambled digital content.

77.   Defendant makes, uses, offers for sale and sells in the U.S. the Accused Products and Services which institute systems and processes for distributing digital content incorporating scrambling techniques.

**Indirect Infringement.**

78.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '506

GARTEISER HONEA – TRIAL ATTORNEYS

Patent in this State, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of one or more claims of the '506 Patent. Such products include, without limitation, one or more of the Accused Products and Services. By making, using, importing offering for sale, and/or selling such, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '011 Patent under 35 U.S.C. § 271.

79.   Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, *471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh*, 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

80.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is

necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

81.   Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

82.   It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's products and services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012).

**Induced Infringement.**

83.   Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products and Services.

84.   Defendant induces end users of the Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access the Internet via its router system.

85.   Defendant also provides customers other incentives to use the infringing services, such as advertising. *See* Exhibit B; *see Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

86.   Defendant had knowledge of the '506 Patent at least as early as the service of this complaint, and has known since then that the Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the Accused Products and Services, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '506 Patent by actively inducing infringement.

87.   The Ninth Circuit has rejected the notion that a plaintiff must allege the facts from which knowledge is to be inferred. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545−47 (9th Cir. 1994), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Rather, it is sufficient to allege knowledge or intent "generally, just as the rule states—that is, simply by saying that [it] existed." *Id.* at 1547.

**Contributory Infringement.**

88.   Defendant is also a contributory infringer.   In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

89.   The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

90.   Defendant contributed to the infringement by providing the Accused Products and Services to its customers, partners and resellers.

91.   The accused functionality in the Accused Products and Services has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F. 3d 1301 (Fed. Cir. 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses.   *See id.* at 1321.

**Plaintiff Suffered Damages.**

92.   Defendant's acts of infringement of the '506 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount described in the prayer below.

Defendant's infringement of Blue Spike's exclusive rights under the '506 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

93.   On information and belief, the infringement of the '506 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '506 Patent, including but not limited to at least one or more of the following events:

   a.   The filing of Blue Spike's complaint against Defendant.

   b.   In the course of its due diligence and freedom to operate analyses.

   c.   News coverage of Blue Spike's enforcement of this patent against other infringers.

94.   On information and belief, Defendant has had at least had constructive notice of the '506 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

95.   A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to

GARTEISER HONEA – TRIAL ATTORNEYS

support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

96.   The Ninth Circuit has rejected the notion that a plaintiff must allege the facts from which knowledge is to be inferred. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545–47 (9th Cir. 1994), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Rather, it is sufficient to allege knowledge or intent "generally, just as the rule states—that is, simply by saying that [it] existed." *Id.* at 1547.

### REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)   enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit in the amount of reasonable royalty based on revenue of accused product and service of at least $40 million, and more if damages are trebled;

(b)     enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)     enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)     enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

1

2

3

Respectfully submitted,


Randall T. Garteiser
  California Bar No. 231821
  rgarteiser@ghiplaw.com
Christopher A. Honea
  California Bar No. 232473
  chonea@ghiplaw.com
Ian Ramage
  California Bar No. 224881
  iramage@ghiplaw.com
**GARTEISER HONEA**
795 Folsom Street, Floor 1
San Francisco, California 94107
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*Counsel for Blue Spike LLC*

GARTEISER HONEA – TRIAL ATTORNEYS

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

/s/ Randall Garteiser

GARTEISER HONEA – TRIAL ATTORNEYS